STATE v. GLENN MAXWELL.

(Filed 1 February, 1939.)

1. **Homicide § 26—When defendant pleads not guilty, court may not direct jury to find him guilty of murder in the first or second degree, even though defendant himself testifies he shot and killed deceased.**

It is error for the court to instruct the jury that they might render one of two verdicts, guilty of murder in the first degree or of murder in the second degree, but that in no event might they return a verdict of guilty of manslaughter or not guilty, even though defendant testifies that he shot and killed deceased, since on defendant's plea of not guilty the presumption of innocence attaches until removed by the verdict of the jury, and the credibility of the testimony is for the jury to determine.

2. **Criminal Law § 53e—**

The court may not express an opinion as to the weight or credibility of the evidence or as to defendant's guilt. C. S., 564.

STACY, C. J., dissents.

BARNHILL, J., dissenting.

APPEAL by defendant from *Phillips, J.,* at May Term, 1938, of ALLEGHANY. New trial.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*W. B. Austin, H. A. Cranor, and Trivette & Holshouser for defendant, appellant.*

SCHENCK, J. The defendant was convicted of murder in the .first degree of Charlie Shepherd and from sentence of death by asphyxiation appealed to the Supreme Court, assigning error.

The defendant testified in his own behalf: "After I started back home I came on back up this way and saw Charlie over there in the garden with his mammy. I had not seen Charlie anywhere or at any time that day. I hadn't seen him before then. I didn't know he was working over there. When I saw him I went over there to ask him about this racket they had and asked him did he hit that boy with an axe, and on the spur of the moment—he never said a word that I could understand, and I took it for granted that he had hit my boy with an axe. I shot him—that is what I done, flew all to pieces—I shot him because he didn't make me no answer. I had not intended to shoot or kill anybody up to this time; never had no intention whatever. Up to this time

me and Charlie had been neighbors and good friends. . . . After the shooting, when I came to myself, I was there in the road, going back toward home. I don't remember how many times I shot. After the shooting I went back up home and left my gun at home."

The following excerpt from the charge is made the basis of an exceptive assignment of error: "But the court charges you, gentlemen of the jury, your verdict will be one of two: Your verdict will be 'guilty of murder in the first degree,' as charged in the bill of indictment, or 'guilty of murder in the second degree,' and in no event will your verdict be 'guilty of manslaughter,' or 'not guilty.' "

We are constrained to sustain this assignment of error. The defendant had pleaded not guilty and the presumption of innocence followed him until removed by the verdict of the jury. While the court may have been justified in instructing the jury that if they found the facts to be as testified by the defendant, or if they believed the testimony of the defendant himself, they could not return a verdict of guilty of manslaughter or of not guilty, the verdict was required to be predicated upon the findings of fact by the jury from all of the evidence in the case—the credibility of the testimony being for the jury to determine. Under our system of trial the judge is prohibited from expressing an opinion as to defendant's guilt.

"Rev. Code, ch. 31, sec. 130 (C. S., 564), provides that 'no judge, in delivering a charge to the petit jury, shall give an opinion, whether a fact is fully or sufficiently proved, such matter being the true office and province of the jury.' This statute is but in affirmance of the Constitution, Art. I, secs. 13-17, and the well-settled principles of the common law, as set forth in *Magna Carta*. The jury must not only unanimously concur in the verdict, but must be left free to act according to the dictates of their own judgment. The final decision upon the facts rests with them, and any inference by the court tending to influence them into a verdict against their convictions is irregular and without the warrant of law. The judge is not justified in expressing to the jury his opinion that the defendant is guilty upon the evidence adduced." *S. v. Dixon,* 75 N. C., 275.

For error assigned there must be a
New trial.

STACY, C. J., dissents.

BARNHILL, J., dissenting: As set out in the statement of facts in the majority opinion, the defendant was sworn and testified in his own behalf. In so doing he admitted that he shot the deceased because he did not make any answer to the defendant's inquiry about trouble be-

tween the deceased and the defendant's boy. Thus, the defendant solemnly admitted in open court under oath that he intentionally shot the deceased.

It has long been the established law of this State that when a killing with a deadly weapon is admitted or established by the evidence, the law raises two presumptions against the slayer: First, that the killing was unlawful, and, second, that it was done with malice; and that an unlawful killing with malice is murder in the second degree. *S. v. Fowler,* 151 N. C., 731; *S. v. Benson,* 183 N. C., 795; *S. v. Walker,* 193 N. C., 489; *S. v. Miller,* 197 N. C., 445; *S. v. Ferrell,* 202 N. C., 475. Likewise, it is now elementary law that when the defendant admits the killing with a deadly weapon and undertakes to reduce the killing to manslaughter or to excuse it altogether on the grounds of self-defense, accident, misadventure, or insanity, the burden is cast upon him to prove to the satisfaction of the jury, the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or will excuse it altogether.

The defendant admitted the killing with a deadly weapon. Under the foregoing rules of law uniformly followed by this Court this admission made him presumptively guilty of murder in the second degree, at least. He offered no evidence which would rebut the presumption of malice, nor did he offer any evidence of any fact or circumstance which the law recognizes as a legal excuse for a killing. Therefore, the jury could not, on the evidence in this case, return a verdict of "Guilty of manslaughter," or "Not guilty," without violating its oath to return a true verdict upon the evidence. It was the duty of the judge to instruct them as to the law in this respect, and the statement in the charge to the jury that, "In no event will your verdict be 'guilty of manslaughter' or 'not guilty,'" when considered in connection with the charge as a whole, was clearly a statement, as a matter of law, that the defendant had offered no evidence which would rebut the presumption of malice arising upon the defendant's admission and thus reduce the crime to manslaughter; and that the defendant had likewise offered no evidence, which in law, justified or excused the killing. This was a correct statement of the law upon the evidence in this case.

I cannot concur in the statement of the majority opinion that the presumption of innocence followed the defendant until removed by the verdict of the jury. It followed him only up to the time he admitted the killing with a deadly weapon. When this admission was made the presumption of innocence vanished and the burden shifted to the defendant. Had the defendant made the admission by plea or through counsel it would have been recognized and acted upon by the court with the full approval of the law. His solemn admission on the witness stand should not be given less force and effect than an admission made through coun-

sel or by way of plea.   Speaking to the subject in *S. v. Miller, supra, Stacy, C. J.,* says: "The prisoner, who testified that he was not drinking on the day in question, tendered a plea of murder in the second degree, but this was not accepted by the State.   The appeal, therefore, presents the single question as to whether the evidence tending to show premeditation and deliberation is sufficient to warrant a verdict of murder in the first degree."   Thus it was held that a tendered, but an unaccepted, plea of murder in the second degree eliminated any consideration of the evidence with a view to determining whether a verdict of manslaughter or not guilty was permissible.

The credibility of witnesses is not involved.   The charge was based upon the admission.   Had the State relied solely upon evidence offered by it then an entirely different question would be presented and the charge as given would be erroneous.   For, in such instance, it would have been the duty of the court to submit the question of credibility of witnesses to the jury for its consideration and determination.   This might likewise be true if the defendant had made conflicting statements as to the shooting.   The jury would then have to determine the facts, but here there is no modification, contradiction, repudiation or retraction of his statement that he shot the deceased under the circumstances outlined by him.   There is no evidence tending to mitigate or excuse to be considered by the jury.

It is apparent that the defendant offered his testimony to rebut the allegation that the killing was without premeditation and deliberation. No doubt this view was forcefully presented to the jury.   In any event, the defendant is not allowed to impeach or discredit his own testimony or the testimony of his witnesses.   However, notwithstanding this rule that a defendant is not permitted to impeach his own testimony, this cause is sent back for a new trial, because the judge below did not give the jury the opportunity to say by its verdict that it did not believe or accept the defendant's admission that he killed the deceased with a deadly weapon.   It is not the way of the courts to permit a defendant to thus blow hot and cold according to the exigencies of the situation. Having admitted the killing with a deadly weapon he should not now, in this Court, be permitted to urge as error a clearly correct statement of the law based on the defendant's admission; nor to urge as error the failure of the court to give the jury an opportunity to say that he was not telling the truth, and in fact he did not kill the deceased, notwithstanding his admission to that effect.