IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1274

 Filed: 20 August 2019

Durham County, No. 16 CRS 2673–74

STATE OF NORTH CAROLINA

 v.

WILLIAM ALLAN MILES

 Appeal by defendant from judgment entered 18 September 2017 by Judge

James K. Roberson in Durham County Superior Court. Heard in the Court of Appeals

22 May 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Lewis W.
 Lamar, Jr., for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Sterling
 Rozear, for defendant-appellant.

 BRYANT, Judge.

 Where the evidence, when taken in the light most favorable to the State, was

substantial to show defendant committed the charged offenses, the trial court did not

err in denying defendant’s motion to dismiss for identity theft and conspiracy to

commit robbery with a dangerous weapon. Where the testimony of a law enforcement

officer was proper, the trial court did not err in admitting the testimony. Where the

trial court properly informed the jury on the identity theft charge, the trial court did

not err in giving the jury instruction.
 STATE V. MILES

 Opinion of the Court

 On 6 September 2016, defendant William Allan Miles was indicted for

attempted robbery with a dangerous weapon, conspiracy to commit robbery with a

dangerous weapon, assault with a deadly weapon with intent to kill, and identity

theft. The matter was tried on 11 September 2017 before the Honorable James K.

Roberson, Judge presiding.

 The State’s evidence tended to show that at approximately 4:00 a.m. on 29 July

2016, Jacob Badders was asleep in his home on Cole Mill Road when he noticed lights

shining into his window and heard a car horn “honking” in his driveway. Badders

went outside and encountered a woman who asked to use his phone saying that she

had gotten into a fight with her father. Badders told her to leave, and he went inside

to call the police. As he started looking for his cellphone, Badders’s girlfriend told

him they had left their phones in his car. Badders went outside to retrieve their

phones, taking his gun with him. When he reached his car, a male approached him

with a gun and said, “Don’t f**kin’ move.” The two men exchanged gunfire, and the

assailant ran away. Badders called the police who arrived at the scene minutes later.

 Officer Lauren McFaul-Brow and Officer J.E. Harris, of the Durham County

Police Department, arrived at Badders’s house and interviewed Badders and his

neighbor John Lobaldo. Badders informed Officer McFaul-Brow that he used “snake

shot” as ammunition, which would leave a distinctive wound on his assailant. Later

during her investigation, Officer McFaul-Brow received information that someone

 -2-
 STATE V. MILES

 Opinion of the Court

had come into Duke Regional Hospital––approximately 10 minutes from Badders’s

house––with a distinctive wound matching the description of the snake shot

described by Badders.

 Officer Harris interviewed Lobaldo, who had surveillance cameras around his

house, and reviewed the surveillance footage. Lobaldo stated that he noticed two cars

enter a church parking lot near the intersection of Cole Mill Road. He saw three men

get out of one of the cars and run across Cole Mill Road to the back of Badders’s house.

One of the cars, driven by a white female, left the church parking lot and drove to

Badders’s house. The car parked in Badders’s driveway and “honked” the horn three

times until Badders came outside. Lobaldo heard the shooting and saw the assailant,

along with two other men, get into one of the cars as they fled from Badders’s house.

The assailant seen leaving Badders’s house was wearing a white t-shirt, jeans, tennis

shoes, and a white toboggan or bandana on his head. Lobaldo stated he could tell the

assailant was hurt by the way he was running.

 The assailant––later identified as defendant––arrived at the hospital for

treatment of his gunshot wounds. When defendant was asked for his name, he

responded with a name, date of birth, and address other than his own. He gave the

name “Jerel Antonio Thompson” and, as a result, he was provided a hospital tag with

that name and corresponding date of birth. Defendant’s clothing––a white t-shirt

and jeans––was taken into evidence. Defendant later revealed his correct name and

 -3-
 STATE V. MILES

 Opinion of the Court

other identifying information and told an investigating officer that he started using

the identity of Jerel Thompson because “it kind of matched him.”

 At trial, defendant moved to dismiss charges of attempted robbery with a

dangerous weapon, felony conspiracy (to commit robbery with a dangerous weapon),

assault with a deadly weapon with intent to kill, and identity theft. The trial court

denied defendant’s motions to dismiss.

 Defendant was found guilty by jury of conspiracy to commit robbery with a

dangerous weapon and identity theft. After the trial court declared a mistrial on the

remaining charges, the State dismissed those charges. Defendant was sentenced to

29 to 47 months of imprisonment for conspiracy to commit robbery with a dangerous

weapon and a consecutive sentence of 12 to 24 months for identity theft. Defendant

appealed.

 _________________________________________________________

 On appeal, defendant argues the trial court erred by: I) failing to dismiss the

charges of conspiracy to commit robbery with a dangerous weapon and identity theft,

II) permitting improper opinion testimony from a lay witness, and III) instructing the

jury on identity theft.

 I

 Defendant argues that the trial court erred by denying his motion to dismiss

because the State did not present substantial evidence to support the charges against

 -4-
 STATE V. MILES

 Opinion of the Court

him––identity theft and conspiracy to commit robbery with a dangerous weapon.

Specifically, defendant argues the State neither proved that he agreed to commit

robbery or that he used identifying information of another person. We disagree.

 The standard of review for this Court to review the trial court’s denial of a

motion to dismiss is de novo. State v. Woodard, 210 N.C. App. 725, 730, 709 S.E.2d

430, 434 (2011). “Under a de novo review, the court considers the matter anew and

freely substitutes its own judgment for that of the lower tribunal.” State v. Williams,

362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quotation marks omitted).

 “Upon defendant’s motion for dismissal, the question for the Court is whether

there is substantial evidence (1) of each essential element of the offense charged, or

of a lesser offense included therein, and (2) of defendant’s being the perpetrator of

such offense. If so, the motion is properly denied.” State v. Powell, 299 N.C. 95, 98,

261 S.E.2d 114, 117 (1980). “Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.” State v. Blake,

319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (citation and quotation marks omitted).

“[T]he trial court should only be concerned that the evidence is sufficient to get the

case to the jury,” as opposed to examining the weight of the evidence. State v.

Earnhardt, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982). “In making its

determination, the trial court must consider all evidence admitted, whether

competent or incompetent, in the light most favorable to the State, giving the State

 -5-
 STATE V. MILES

 Opinion of the Court

the benefit of every reasonable inference and resolving any contradictions in its

favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

 In the instant case, defendant challenges his convictions for identity theft and

conspiracy to commit robbery with a dangerous weapon. We address each claim in

order.

 Identity Theft

 Defendant argues the State did not present evidence of “identifying

information” because he only provided another person’s name, date of birth, and

address. Defendant concedes that he did not preserve this issue for appellate review

due to his failure to raise the issue before the trial court.1 See N.C.R. App. P. 10(a)(1)

(2019) (“In order to preserve an issue for appellate review, a party must have

presented to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling. . . [i]t is also necessary for the complaining party to obtain a

ruling [from the trial court] upon the party’s request, objection, or motion.”).

 Acknowledging his failure to preserve this issue, defendant asks this Court to

invoke Rule 2 of the North Carolina Rules of Appellate Procedure to consider the

merits of his argument. See N.C.R. App. P. 2 (2019) (Rule 2 provides, in pertinent

part, that “[t]o prevent manifest injustice to a party, . . . either court of the appellate

 1At trial, defendant argued that he did not knowingly use the name, date of birth, and address
of Jerel Thompson because he was given pain medicine at the hospital. However, that argument was
not presented on appeal.

 -6-
 STATE V. MILES

 Opinion of the Court

division may . . . suspend or vary the requirements or provisions of any of these rules

in a case pending before it[.]”). However, this Court will invoke Rule 2 only in

exceptional circumstances or to prevent manifest injustice, and defendant has not

demonstrated such an exceptional circumstance exists to warrant invocation of the

rule. Thus, we decline to exercise our discretion to invoke Rule 2 to address

defendant’s argument regarding the identity theft charge.2

 Conspiracy to Commit Robbery with a Dangerous Weapon

 Defendant contends the State did not present substantial evidence to

withstand a motion to dismiss for conspiracy to commit robbery with a dangerous

weapon. We disagree.

 The State’s successful assertion of a charge of criminal
 conspiracy requires proof of an agreement between two or
 more people to do an unlawful act or to do a lawful act in
 an unlawful manner. The State need not prove an express
 agreement. Evidence tending to establish a mutual,
 implied understanding will suffice to withstand a
 defendant’s motion to dismiss.

State v. Boyd, 209 N.C. App. 418, 427, 705 S.E.2d 774, 781 (2011) (citation and

quotation marks omitted).

 2 As an alternative argument, defendant contends his trial counsel provided ineffective
assistance by failing to make a general motion to dismiss and preserve the identity theft claim. While
defendant’s issue does not rise to the level that would require us to suspend the rules, as a practical
matter, we analyze the identity theft statute in our review of his properly preserved argument in Issue
III, regarding jury instructions. Thus, as noted infra, we see no prejudice from trial counsel’s actions
and dismiss defendant’s IAC argument.

 -7-
 STATE V. MILES

 Opinion of the Court

 “The proof of a conspiracy may be, and generally is, established by a number

of indefinite acts, each of which, standing alone, might have little weight, but, taken

collectively, they point unerringly to the existence of a conspiracy.” State v. Lawrence,

352 N.C. 1, 25, 530 S.E.2d 807, 822 (2000) (citation and quotation marks omitted).

Moreover, “[i]n order for a defendant to be found guilty of the substantive crime of

conspiracy, the State must prove there was an agreement to perform every element

of the underlying offense.” State v. Dubose, 208 N.C. App. 406, 409, 702 S.E.2d 330,

333 (2010).

 Here, the evidence presented showed defendant was one of at least four people

who occupied two cars that were present at the scene of the crime. Two cars drove

into a parking lot of a church located in the victim’s neighborhood in the early

morning. One car with three male occupants parked at the church parking lot. The

other car had a female occupant who then drove into Badders’s driveway and initiated

contact with Badders by honking her car horn. Badders instructed the female to leave

his property, and soon thereafter, Badders was approached by a man––later

identified as defendant––with a loaded weapon. After the two men exchanged

gunfire, three men including defendant were seen running away from Badders’s

house. Badders’s assailant was seen getting back into the car at the parking lot.

When viewing all the evidence in the light most favorable to the State, a logical

inference to be drawn is there was a meeting of minds to form an agreement to commit

 -8-
 STATE V. MILES

 Opinion of the Court

robbery. See State v. Brewton, 173 N.C. App. 323, 329–30, 618 S.E.2d 850, 855–56

(2005) (holding that an agreement may be established by circumstantial evidence).

 Additionally, the State presented evidence satisfying the essential elements of

the underlying offense: robbery with a dangerous weapon. See State v. Haselden, 357

N.C. 1, 17, 577 S.E.2d 594, 605 (2003) (stating that a defendant is guilty of robbery

with a dangerous weapon under N.C. Gen. Stat. § 14-87 where the defendant

commits: “(1) an unlawful taking or an attempt to take personal property from the

person or in the presence of another, (2) by use or threatened use of a firearm or other

dangerous weapon, [and] (3) whereby the life of a person is endangered or threatened”

(citation omitted)).

 The evidence shows that defendant approached Badders from behind while

Badders was retrieving his phone from his car in the driveway of his house.

Defendant raised a loaded weapon towards Badders, threatening him by saying,

“don’t f**kin’ move.” Badders reacted by drawing his weapon, and they exchanged

gunfire. Defendant’s actions accompanied by his words were substantial evidence

that defendant manifested the intent to rob Badders, and his arrival at Badders’

house with the weapon was an overt act to carry out his intentions. See State v. Davis,

340 N.C. 1, 13, 455 S.E.2d 627, 632 (1995) (holding that the defendant’s actions were

substantial evidence of attempted armed robbery where he drew his pistol and stated

 -9-
 STATE V. MILES

 Opinion of the Court

to the victim, “Buddy, don’t even try it,” even without the demand for money or

property).

 Accordingly, as the State presented substantial evidence that defendant

conspired with several others to commit robbery with a dangerous weapon, we

overrule defendant’s argument.

 II

 Next, defendant argues the trial court allowed improper witness testimony

from Officer Harris into evidence. Specifically, defendant argues that the testimony

of Officer Harris, as to the modus operandi of the crime and similar incidents within

the area, was inadmissible opinion testimony. Having not objected to the testimony

at trial, defendant now urges that Harris’s testimony constituted plain error. We

disagree.

 In criminal cases, an issue that was not preserved by
 objection noted at trial and that is not deemed preserved
 by rule or law without any such action nevertheless may be
 made the basis of an issue presented on appeal when the
 judicial action questioned is specifically and distinctly
 contended to amount to plain error.

N.C.R. App. P. 10(a)(4) (2019).

 “For error to constitute plain error, a defendant must demonstrate that a

fundamental error occurred at trial.” State v. Lawrence, 365 N.C. 506, 518, 723

S.E.2d 326, 334 (2012). “To show that an error was fundamental, a defendant must

establish prejudice—that, after examination of the entire record, the error had a

 - 10 -
 STATE V. MILES

 Opinion of the Court

probable impact on the jury’s finding that the defendant was guilty.” Id. (citation and

quotation marks omitted).

 Rule 404(b) of the North Carolina Rules of Evidence governs the admissibility

of relevant evidence of other crimes, wrongs, or acts.

 This rule is subject to but one exception requiring exclusion
 [of the evidence] if its only probative value is to show that
 the defendant has the propensity or disposition to commit
 an offense of the nature of the crime charged. Thus,
 although the evidence of the defendant’s other crimes may
 tend to show his inclination to commit them, the evidence
 is admissible under Rule 404(b), as long as it is also
 relevant for some other proper purpose. Such other
 purposes include establishing motive, opportunity, intent,
 preparation, plan, knowledge, identity, or absence of
 mistake, entrapment or accident.

State v. Allred, 131 N.C. App. 11, 17–18, 505 S.E.2d 153, 157 (1998) (alterations in

original) (emphasis added) (internal citations and quotation marks omitted).

 Here, Office Harris testified, without objection, during direct examination, to

the following when asked specifically about the motive behind the sequence of events:

 [THE STATE]: Tell me about [the motive of the crime or
 the MO]. What does an "MO" mean?

 [OFFICER HARRIS]: Modus operandi, how a criminal
 operates.

 [THE STATE]: And can you describe for the jury what that
 is?

 [OFFICER HARRIS]: It’s the way a person particularly
 commits a crime. With this particular one, it seemed that
 the suspects would use a female in a car by herself to lure
 out the victim and easy access into the home. Once the

 - 11 -
 STATE V. MILES

 Opinion of the Court

 female would get access to the home, the other two suspects
 or however many suspects would use that opportunity to
 get entry to the home, take command of it and to commit
 an armed robbery.

 [THE STATE]: Have you seen this particular MO before in
 that area?

 [OFFICER HARRIS]: We have had a number of similar
 incidents within the area in the city in those -- in that
 particular time during the summer.

Officer Harris further testified that he became aware of similar incidents occurring

in the area after reviewing the reports filed by other officers before his shift.

 Defendant’s contention that the aforementioned testimony is somehow

improper opinion testimony because Officer Harris gave “his opinion [that] the

suspects were guilty of conspiracy” is a mischaracterization of Officer Harris’s

testimony. Contrary to defendant’s assertions in his brief, Officer Harris never

testified it was his opinion that the suspects were guilty of conspiracy. Officer Harris

testified to his understanding of what occurred on the night in question, after

interviewing a witness on the scene and reviewing the surveillance video, and merely

testified, without objection, to the modus operandi defendant used. Our rules of

evidence allow a lay witness to testify about details “helpful to the fact-finder in

presenting a clear understanding of [the] investigative process” as long as such

details are rational to the lay witness’s perception and experience. State v. O’Hanlan,

153 N.C. App. 546, 562–63, 570 S.E.2d 751, 761–62 (2002).

 - 12 -
 STATE V. MILES

 Opinion of the Court

 Moreover, as defendant has not demonstrated it is probable that the jury would

have reached a different result––given that the State presented substantial evidence

supporting the charge of criminal conspiracy––we conclude the trial court did not

commit plain error by admitting the testimony.

 III

 Finally, defendant argues the trial court erred by instructing the jury on the

identity theft charge––specifically as to the element of “identifying information”––in

which he contends the instruction was “contrary to existing laws.” After careful

consideration, we disagree.

 “[Arguments] challenging the trial court’s decisions regarding jury instructions

are reviewed de novo by this Court.” State v. Osorio, 196 N.C. App. 458, 466, 675

S.E.2d 144, 149 (2009). “It is the duty of the trial court to instruct the jury on all

substantial features of a case raised by the evidence.” State v. Shaw, 322 N.C. 797,

803, 370 S.E.2d 546, 549 (1988). “Failure to instruct upon all substantive or material

features of the crime charged is error.” State v. Bogle, 324 N.C. 190, 195, 376 S.E.2d

745, 748 (1989).

 Section 14-113.20 of our General Statutes, provides, in pertinent part, that

identity theft exists when: “A person . . . knowingly obtains, possesses, or uses

identifying information of another person . . . with the intent to fraudulently

 - 13 -
 STATE V. MILES

 Opinion of the Court

represent that the person is the other person . . . for the purpose of avoiding legal

consequences[.]” N.C. Gen. Stat. § 14-113.20(a) (2017) (emphasis added).

 The General Assembly enumerated fourteen examples of “identifying

information”:

 The term “identifying information” as used in this Article
 includes the following:

 (1) Social security or employer taxpayer identification
 numbers.

 (2) Driver’s license, State identification card, or passport
 numbers.

 (3) Checking account numbers.

 (4) Savings account numbers.

 (5) Credit card numbers.

 (6) Debit card numbers.

 (7) Personal Identification (PIN) Code as defined in G.S.
 14-113.8(6).

 (8) Electronic identification numbers, electronic mail
 names or addresses, Internet account numbers, or Internet
 identification names.

 (9) Digital signatures.

 (10) Any other numbers or information that can be used to
 access a person’s financial resources.

 (11) Biometric data.

 (12) Fingerprints.

 - 14 -
 STATE V. MILES

 Opinion of the Court

 (13) Passwords.

 (14) Parent’s legal surname prior to marriage.

Id. § 14-113.20(b).

 On its face, unlike other statutes criminalizing fraudulent crimes involving

identities, the statute in question specifically includes the word “use” in reference to

making use of another’s information to derive a benefit or escape legal consequences.

Compare id., with N.C. Gen. Stat. § 14-100.1 (stating that it is unlawful for any

person to knowingly possess, manufacture, or obtain a false or fraudulent form of

identification (emphasis added)), and N.C. Gen. Stat. § 14-113.20A (stating it is

unlawful for any person to knowingly sell, transfer, or purchase identifying

information of another person (emphasis added)). Additionally, the General

Assembly amended section 14-113.20 to its current version to expand the conduct

prohibited by statute and impose a greater punishment for violating this statute.3

 Defendant contends that the General Assembly intended for this list to be

“distinctive and exclusive” to the aforementioned examples. However, the statute

itself disproves defendant’s contention of exclusivity by usage of the term “includes”

before listing the fourteen examples. See id. § 14-113.20(b) (“The term ‘identifying

 3 Section 14-113.20 was also amended to remove “financial” from the original enactment of the
identity theft statute. See N.C. Sess. Law 2005-414, § 6 (Sept. 21, 2005); see also N.C. Gov. Mess.,
(Sept. 21, 2005) (referring to Sen. Daniel Clodfelter’s remarks as a sponsor of the Bill intended to
create “comprehensive” legislation equipped with “tools to fight this crime” as “identity theft is one of
the fastest-growing crimes in our state right now”).

 - 15 -
 STATE V. MILES

 Opinion of the Court

information’ as used in this Article includes the following [examples] . . . .” (emphasis

added)). We consider the purpose behind enacting the identity theft statute was to

protect against using misrepresentation to achieve a benefit. Where a person

presents himself to be another person and then uses that identification to obtain a

favorable result, such actions were intended to be covered under N.C. Gen. Stat. § 14-

113.20 to support identity theft convictions. Thus, we reject the notion that a

conviction for identity theft is restricted to just the fourteen examples and the

General Assembly intended for the list of these examples to be exclusive.

 Moreover, assuming arguendo, that we were to view the list as exclusive,

defendant’s conduct would fall under subsection (10)––“[a]ny other numbers or

information that can be used to access a person’s financial resources[.]” Another

person’s name, date of birth, and address are possible forms of identifying

information where a defendant, like defendant in the instant case, uses the

information for the purposes of escaping arrest or other legal consequences and

possibly to receive hospital services for his injuries.4

 4 We also consider the federal identity theft statute as persuasive authority, which allows
federal prosecution of a person who “knowingly transfers, possesses, or uses, without lawful authority,
a means of identification of another person with the intent to commit . . . any unlawful activity[.]” See
18 U.S.C. § 1028(a)(7) (2017) (“Fraud and related activity in connection with identification documents,
authentication features, and information”). By definition, “means of identification” includes a name
and date of birth “alone or in conjunction with any other information, to identify a specific individual.”
Id. § 1028(d)(7)(A).

 - 16 -
 STATE V. MILES

 Opinion of the Court

 A warrant for defendant’s arrest was issued under the name Jerel Thompson.

Defendant’s actual name and identifying information were not discovered and

obtained until well after defendant was in custody. Defendant was indicted under

the identity theft statute for using the name, date of birth, and address of Jerel

Thompson while an investigation was underway regarding the events, including the

shooting, that had taken place at Badders’s residence. Therefore, such actions

embody what the General Assembly intended for the identity theft statute to protect

against.

 At trial, the trial court used the North Carolina Pattern Jury Instructions for

identity theft and instructed the jury as follows:

 The defendant has been charged with identity theft.

 For you to find the defendant guilty of this offense, the
 State must prove two things beyond a reasonable doubt.
 First, that the defendant used personal identifying
 information of another person. A person’s name, date of
 birth, and address would be personal identifying
 information.

 And, second, that the defendant acted knowingly and with
 the intent to fraudulently – fraudulently represent that the
 defendant was that other person for the purpose of
 avoiding legal consequences.

 If you find from the evidence beyond a reasonable doubt
 that on or about the alleged date the defendant used
 personal identifying information of another person and
 that the defendant did so knowingly with the intent to
 fraudulently represent that the defendant was that other
 person for the purpose of avoiding legal consequences, it

 - 17 -
 STATE V. MILES

 Opinion of the Court

 would be your duty to return a verdict of guilty. If you do
 not so find or have a reasonable doubt as to one or more of
 these things, it would be your duty to return a verdict of
 not guilty.

The Pattern Jury Instruction provides:

 For you to find the defendant guilty of this offense, the
 State must prove two things beyond a reasonable doubt.

 First, that the defendant [obtained] [possessed] [used]
 personal identifying information of another person. (Name
 type of identifying information, e.g., social security
 number) would be personal identifying information.

 And Second, that the defendant acted knowingly and with
 the intent to fraudulently represent that the defendant was
 that other person for the purpose of [making [financial]
 [credit] transactions in the other person’s name] [obtaining
 anything of [value] [benefit] [advantage]] [avoiding legal
 consequences].

 If you find from the evidence beyond a reasonable doubt
 that on or about the alleged date the defendant [obtained]
 [possessed] [used] personal identifying information of
 another person and that the defendant did so knowingly,
 with the intent to fraudulently represent that the
 defendant was that other person for the purpose of [making
 [financial] [credit] transactions in that other person's
 name] [obtaining anything of [value] [benefit] [advantage]]
 [avoiding legal consequences], it would be your duty to
 return a verdict of guilty. If you do not so find or have a
 reasonable doubt as to one or more of these things, it would
 be your duty to return a verdict of not guilty.

N.C.P.I.—Crim. 219B.80 (2018).

 Here, the trial court gave accurate jury instructions in accordance with the

statute and nearly verbatim to the approved pattern jury instructions for identity

 - 18 -
 STATE V. MILES

 Opinion of the Court

theft. “Jury instructions in accord with a previously approved pattern jury

instruction provide the jury with an understandable explanation of the law,” and this

Court has recognized “that the preferred method of jury instruction is the use of the

approved guidelines of the North Carolina Pattern Jury Instructions.” State v.

Ballard, 193 N.C. App. 551, 555, 668 S.E.2d 78, 81 (2008) (citation and quotation

marks omitted). Having already considered and determined that a person’s name,

date of birth, and address constitutes identifying information under the statute, we

reject defendant’s contention that the trial court gave a jury instruction as to

identifying information that was “contrary to existing law.” Accordingly, we find no

error in the trial court’s jury instruction on identity theft.

 NO ERROR.

 Judges TYSON and ZACHARY concur.

 - 19 -